# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

WAYNE SCHMELZLE,

                         Plaintiff,

       v.                                   6:12-CV-1159
                                             (GLS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

PETER W. ANTONOWICZ, ESQ., for Plaintiff
JEREMY A. LINDEN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to me for report and recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.   <u>PROCEDURAL HISTORY</u>

    Plaintiff first "protectively filed" applications for both Social Security Disability Insurance Benefits ("DIB")  and Supplemental Security Income ("SSI") benefits effective April 8, 2005.[1]  (Administrative Transcript ("T.") 12, 22, 40-45).[2]  The applications were denied on June 9, 2005.  (T. 34-38).  Administrative Law Judge

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits.  *See* 20 C.F.R. § 404.630. There are various requirements for this written statement.  *Id.*  If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

[2] Due to a clerical error, the administrative record filed on November 7, 2012 (Dkt. No. 12) was incomplete.  The balance of the administrative record was filed on May 16, 2013.  (Dkt. No. 18).

("ALJ") Gordon Mahley conducted a hearing on September 13, 2006, at which the plaintiff testified. (T. 188-221). On April 21, 2007, the ALJ issued a decision denying plaintiff's applications for benefits. (T. 12-20). The Appeals Council declined to review the ALJ's unfavorable decision on July 13, 2007. (T. 4-6). Plaintiff filed an appeal of the Commissioner's decision in U.S. District Court in this district on September 10, 2007. (No. 6:07-CV-931 (NAM)).

The plaintiff subsequently filed another application for SSI, and was found to be disabled by the Commissioner as of October 3, 2007. He is currently receiving SSI benefits. Plaintiff could not be found eligible for DIB after his insured status ended on March 31, 2006. (Pl.'s Brf. at 2, Dkt. No. 14).

In a decision dated September 1, 2010, then Chief U.S. District Judge Norman A. Mordue ruled that the ALJ's April 21, 2007 Residual Functional Capacity ("RFC") determination was not supported by substantial evidence, and that the ALJ failed to fully develop the administrative record. *Schmelzle v. Astrue*, 6:07-CV-931 (NAM), 2010 WL 3522305, at *3-4 (N.D.N.Y. Sept. 1, 2010). Judge Mordue remanded the case to the Commissioner for further proceedings, and he directed the ALJ, on remand, to attempt to obtain additional opinion evidence regarding plaintiff's functional limitations from his treating physician. *Id*., 2010 WL 3522305, at *4.

On remand, ALJ Mahley conducted a *de novo* hearing on July 11, 2011, at which plaintiff again testified. (T. 330-56). Because plaintiff's treating doctors from the relevant time period were not available to provide further opinion evidence, the plaintiff submitted a purportedly retrospective RFC assessment from plaintiff's current treating physician, Dr. Teng. (T. 237, 241, 321-23). The ALJ acknowledged that, in light of the award of SSI benefits to plaintiff effective October 3, 2007, the issue on

remand was whether plaintiff was entitled to DIB benefits during a closed period, between January 1, 2004–the amended onset date claimed by plaintiff–and October 2, 2007. (T. 333, 352-54; Pl.'s Brf. at 4). The ALJ issued a decision dated October 13, 2011, denying plaintiff's claim for DIB benefits during the closed period and finding that he was not disabled between January 1, 2004 and the date of the decision. (T. 230-31, 239). On July 9, 2012, the Appeals Council advised that it would not further review the ALJ Mahley's decision on remand, which therefore became the final decision of the Commissioner. (T. 222-24).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be

"more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

## III. <u>FACTS</u>

Plaintiff originally applied for disability due to continuous pain in his right shoulder and back and other physical limitations relating to a gunshot injury to his right shoulder in 1991. (T. 54-55). He worked sporadically after his injury, most consistently between 2002 through early 2004, when he was employed as a bartender. (T. 238, 276-79, 336). As of January 1, 2004–the amended date of the alleged onset of his disabilities–plaintiff was 40 years old. (T. 335).

The court will not set forth here the medical and other factual evidence, which is discussed extensively in the parties' briefs[3] and the ALJ's decision. Relevant details regarding the medical evidence are discussed further below in the course of analyzing

---

[3] The Commissioner's Brief is docketed as No. 16.

the issues critical to resolving this case.

## IV.  **ALJ's DECISION**

The ALJ determined that plaintiff met his insured status requirement for purposes of his DIB application through March 31, 2006, and had not engaged in substantial gainful activity since January 1, 2004. (T. 233). The ALJ found that plaintiff had one severe impairment–"post gunshot wound of the right upper extremity." He concluded that plaintiff's alleged lumbar spine pain could not be considered "severe," and that no medically determinable impairment of plaintiff's cervical spine had been established. (T. 233-35). The ALJ determined that the plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of a "listed impairment"–a finding not challenged by the plaintiff. (T. 235).

After "careful consideration of the entire record," the ALJ found that plaintiff retained the physical RFC to lift/carry 20 pounds occasionally and 10 pounds frequently; sit and stand/walk for six hours in an eight-hour workday; occasionally engage in postural activities; use his left upper extremity for reaching, handling, fingering, and feeling with no limitation; use his right upper extremity for reaching at waist and table level, and up to shoulder level, without limitation; use his right upper extremity for handling, fingering, and feeling without limitation; and occasionally use his right upper extremity for reaching overhead. (T. 235-38). In explaining his RFC assessment, the ALJ determined that the opinion of treating physician Dr. Manion that plaintiff was permanently and totally disabled was not controlling was and "of limited value" given, *inter alia*, the lack of supporting clinical and diagnostic findings in the doctor's treatment notes. (T. 238). The ALJ also found that the opinion of Dr. Teng, who treated plaintiff in 2011, but purported to assess his functional limitations

6

between 2003 and 2007 based on the prior medical records of Dr. Manion, was "not entitled to significant weight." (T. 237). The ALJ did accord "some weight" to the May 2005 opinion of an examining consultant, Dr. Ganesh, who concluded, *inter alia*, that plaintiff had no gross limitation in sitting, standing, walking, climbing, or bending; and a mild-to-moderate limitation in overhead activity. (T. 234, 236, 238).

In reaching his RFC findings, the ALJ also concluded that the plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not credible." (T. 236). In addition to pointing to the medical evidence inconsistent with plaintiff's claims, the ALJ noted discrepancies between plaintiff's most recent allegations of pain and physical limitations and his earlier testimony and statements; his inconsistent work history; and Dr. Ganesh's observations that the plaintiff showed "poor effort" during physical testing in 2005. (T. 236).

At step four of the sequential disability analysis, the ALJ found that, based on plaintiff's RFC, he could not perform his past relevant work as a bartender. (T. 238). Considering the Medical-Vocational Guidelines at step five, the ALJ determined that, based on an RFC for "the full range of light work," there were other jobs that existed in significant numbers in the national economy that the plaintiff could perform. (T. 238-39). The ALJ concluded that claimant "has not been under a disability . . . from January 1, 2004, through the date of his decision." (T. 239).

## V.   ISSUES IN CONTENTION

Plaintiff advances the following arguments:

(1)   The ALJ's RFC determination on remand was unsupported by substantial evidence because, *inter alia*, he continued to find that plaintiff could perform light work without any medical evidence supporting the ALJ's specific conclusions regarding the plaintiff's abilities to lift, carry, sit,

stand, or walk.  (Pl.'s Brf. at 1, 9-13).

    (2)    The ALJ's credibility finding with respect to plaintiff's subjective complaints about his symptoms and limitations was unsupported by substantial evidence.  (Pl.'s Brf. at 1, 13-17).

This court agrees with the plaintiff that the ALJ's RFC findings on remand were, again, not adequately supported by the medical opinion and other evidence.  For the reasons set forth below, the court recommends that, notwithstanding the lengthy delays in this case, it should be remanded, a second time, for further, expedited administrative proceedings.  The court recommends that, on remand, the ALJ consider securing the testimony of a medical expert who, may be able to offer a useful opinion regarding plaintiff's functional limitations during the relevant time period notwithstanding the unavailability of further medical evidence from that period.

## VI.   DISCUSSION

### A.   Legal Standards

#### 1.   RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each

physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that the report is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 4.    Completing the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d), 416.912(d). Furthermore, "[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, 1:06-CV-511 (NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008) (citing *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y.2002)). Although the ALJ must attempt to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79, n. 5 (2d Cir. 1999).

### B.    Analysis

### 1.    RFC Assessment  and Development of the Record

Following the first hearing in this case, ALJ Gordon Mahley made an RFC determination based on a state agency assessment purportedly supported by the findings of a consultative examining physician (Dr. Ganesh). The ALJ found that plaintiff retained the RFC, in an eight-hour workday, to sit for up to six hours, stand/walk for up to six hours, and lift/carry up to 20 pounds with his left upper extremity, with limitations in overhead reaching with this right upper extremity. (T.

16). In remanding this case for further proceedings after the Commissioner's initial decision, Judge Mordue found that the ALJ's RFC determination–that the plaintiff could perform most of the functions of "light work"–was not supported by substantial evidence, and held that further development of the record was required. *Schmelzle v. Astrue*, 2010 WL 3522305, at *3-4. In particular Judge Mordue that "there was no medical evidence in the record to support [the State Agency's] specific findings regarding, *inter alia*, the amount of weight . . . plaintiff could lift and carry, or how long he could sit, stand, or walk." *Id*. at *3.

On remand, ALJ Mahley and plaintiff's counsel attempted to obtain a functional evaluation from the physician who treated plaintiff during the time period in question, as Judge Mordue specifically directed, *Id.* at *4; but Dr. Manion had retired and was not available to supplement the record. (Pl.'s Brf. at 9-10; T. 237, 241, 247, 333-35). Instead, plaintiff submitted a medical source statement from his current primary care physician, Dr. Teng, whose opinions purported to reflect plaintiff's condition between January 1, 2003 and April 22, 2007, based on the doctor's review of Dr. Manion's records from that time period. (T. 313, 321-23).

Dr. Teng's RFC assessment provided no support for the ALJ's prior RFC findings. Dr. Teng found that the plaintiff could lift/carry only between five and ten pounds, could walk only with the support of a cane, could only sit for only one hour or less during an eight-hour workday, needed to lay down intermittently during the day, and, because of incapacitating pain, would be "off-task" for at least 50% of the time in an eight-hour workday. (T. 321-23).

In making his RFC assessment on remand, the ALJ focused on the lack of credibility he attached to plaintiff's claims regarding debilitating limitations and symptoms, and the absence of objective medical evidence supporting the opinions of Dr. Teng and Dr. Manion, who summarily concluded, in 2005 and early 2006, that plaintiff was "disabled" because of chronic pain (T. 131-41). (T. 236-38). The only medical opinion providing any support for the ALJ's RFC determination on remand was the original opinion of consultative examining physician Dr. Ganesh, to whom the ALJ gave "some weight." (T. 236-38).

Dr. Ganesh concluded, on May 15, 2005, *inter alia*, that plaintiff had 5/5 strength in both upper extremities; no gross limitation in sitting, standing, walking, climbing, or bending; and a mild-to-moderate limitation in overhead activity. (T. 121, 236, 237). Consistent with Judge Mordue's prior opinion, this court concludes that Dr. Ganesh's opinion did not provide any support for the ALJ's specific RFC findings, particularly those involving the amount of weight plaintiff could lift and carry. *See Schmelzle v. Astrue*, 2010 WL 3522305, at *3. *See also Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y.2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not

specifically explain the scope of claimant's work-related capabilities."); *Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."); *Felder v. Astrue*, 10-CV-5747, 2012 WL 3993594, at *11-13 (E.D.N.Y. Sept. 11, 2012). This court concludes that the ALJ's RFC determination on remand was, again, not supported by substantial evidence.

As noted above, the burden of proof with respect to establishing RFC at the fourth step in the sequential disability analysis rests with the plaintiff. It is clear, following the change of the Social Security regulations effective August 26, 2003, that the shift of the burden of proof to the Commissioner at the fifth step does not also shift the burden of proof on RFC. *See Poupore v. Astrue*, 566 F.3d at 306 ("Under the applicable new regulation, the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity.") (citing 20 C.F.R. § 404.1560(c)(2)).[4]

There was nothing further the ALJ could do on remand to obtain a more definitive RFC analysis from the doctors who treated plaintiff during the relevant time period, because all of them had retired or left the area by the time of the second hearing and decision in 2011. (T. 237, 247). However, the ALJ could have called upon a medical expert to analyze the complete medical evidence, including records

---

[4] The Second Circuit in *Poupore* noted that, at least for cases in which the onset of disability was after August 26, 2003, the new regulations abrogated a line of cases, including *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), which held that, in cases that proceeded to step five, the Commissioner bore the burden of proving that the claimant had the RFC necessary to perform work that was available in the national economy. In this case, the plaintiff claims an onset date of January 1, 2004, so he cannot rely on the *Curry* standard. (Pl.'s Brf. at 4).

generated after March 2006 which the ALJ did not consider, to see if the expert could offer an opinion regarding the extent of plaintiff's limitations as of his last-insured date.[5]  *See, e.g.*,  *Bathrick v. Astrue*, 3:11-CV-101 , 2012 WL 1069180, at \*4 (D. Conn. Mar. 9, 2012) (despite a critical lack of medical evidence supporting his RFC finding that the plaintiff could lift 50 pounds, as required to perform unskilled medium work, the ALJ failed to avail himself of the several avenues available to him in an attempt to obtain the necessary medical evidence, such as requesting the opinion of a medical expert on the issue of lifting and carrying; because of the inadequacies in the record, the ALJ's RFC finding is necessarily flawed) (Report-Recommendation), *approved in relevant part*, 2012 WL 1068985, at \*4-5 (D. Conn. Mar. 29, 2012).[6]  Or, as they sometimes do, the Appeals Council could have directed the ALJ to consult such a medical expert.  *See, e.g.*, *Cohen v. Astrue*, 07 Civ. 535, 2011 WL 2565659, at \*1 (S.D.N.Y. May 17, 2011) (the Appeals Council remanded the case back to the ALJ because his RFC findings were not supported by specific medical opinion evidence and directed that the ALJ obtain testimony from a medical expert); *Norman v. Astrue*, _

---

[5] A state agency consultant, who was apparently not a physician, did an RFC assessment (T. 124-29) based primarily on the findings of Dr. Ganesh.  As Judge Mordue concluded, this assessment lacked sufficient support in the medical evidence in the record.  *Schmelzle v. Astrue*, 2010 WL 3522305, at \*2-3 & n.1.  The ALJ did not even refer to this RFC assessment in his decision on remand.  The RFC analysis of Dr. Teng, discussed further below, was based on the review only of the records of Boonville Family Care, where plaintiff received his primary medical care, not the complete medical evidence of record.

[6] *Cf. Cataneo v. Astrue*, 11-CV-2671, 2013 WL 1122626, at \* 16 (E.D.N.Y. Mar. 17, 2013) (in the context of applying SSR 83-20, 1983 WL 31249, to determine onset date: "courts have found it 'essential' for the Commissioner to consult a medical advisor where . . . a claimant does not have contemporaneous medical evidence from the period around his alleged disability onset date; the record is ambiguous with respect to onset date; and claimant's disability onset date must therefore be inferred from present medical evidence") (collecting cases).

_ F. Supp. 2d __,10 Civ. 5839, 2012 WL 4378042, at *8 (S.D.N.Y. Sept. 25, 2012).

Notwithstanding the efforts of the ALJ to obtain further opinion evidence from

plaintiff's treating doctors, as directed by Judge Mordue, the Commissioner did not

fulfill his duty, on remand, to fully develop the record with respect to plaintiff's RFC.

### 2.    Nature of Remand

Given that the Commissioner, on remand, did not remedy the fact that the ALJ's

RFC determination was not supported by substantial medical evidence on a fully

developed record, this case must be remanded again.  The court must determine

whether the remand should be solely for the determination of benefits, as the plaintiff

urges (Pl.'s Brf. at 17), or whether a remand for further administrative proceedings is

more appropriate.

"When there are gaps in the administrative record or the ALJ has applied an

improper legal standard . . . remand to the Secretary for further development of the

evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980).  On the other hand, remand for determination of benefits is warranted "'when

the record provides persuasive proof of disability and a remand for further evidentiary

proceedings would serve no purpose.'"  *Id.  See also Valerio v. Commissioner of

Social Sec.*, 08-CV-4253, 2009 WL 2424211, at *17 (E.D.N.Y.  Aug. 6, 2009) (Where

there is "'no apparent basis to conclude that a more complete record might support the

Commissioner's decision, we have opted simply to remand for a calculation of

benefits.'") (*quoting Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)).

In order to qualify for DIB benefits for the closed period, the plaintiff must have

been disabled on or before March 31, 2006, his last insured date. *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir.1989) (a plaintiff can only be entitled to a "period of disability," if his continuous disability began before the date on which his insured status lapsed) (*citing* 20 C.F.R. § 404.320(b)(2)); *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009). Based on the evidence of record, this court cannot say that there is "persuasive proof" that plaintiff was disabled as of March 31, 2006 or that the Commissioner could not, on remand, develop or articulate further evidence supporting the ultimate conclusion that plaintiff was not disabled on his last insured date.

### a. Proof of Disability as of Plaintiff's Last Insured Date

Plaintiff has reported that his condition has been "progressively worsening" since he suffered a gunshot injury to his right shoulder in 1991. (T. 168). That plaintiff's condition was deteriorating, not improving, is corroborated by other evidence in the record. With one exception in 2000 (T. 117-18), plaintiff did not seek relevant medical treatment between 1992 and August 2005 (T. 116, 130, 233). Moreover, plaintiff was gainfully employed, *inter alia*, as a bartender, during some of this time period, including between 2002 and early 2004. (T. 238, 277-79). After he reapplied for SSI benefits, plaintiff was found to be disabled by the Commissioner as of October 3, 2007. (T. 231). However, the court cannot conclude, based on the medical evidence of record, that there is substantial evidence that plaintiff was disabled by March 31, 2006.

In August 2000, an MRI of plaintiff's lumbar spine detected early degenerative changes and broadbased bulges on the L4-5 and L5-S1 discs, with some loss of signal

intensity. (T. 117). An MRI of plaintiff's cervical spine at the same time revealed small herniation on the C5-6 and C6-7 disc which did "not appear to significantly compress cord or nerve roots." (T. 118). A lumbar-sacral x-ray in May 2005 showed that the disc spaces were preserved, although there was mild "lipping." A x-ray of plaintiff's right shoulder was unremarkable except for evidence of debris from a firearm injury below the shoulder joint. (T. 123). A November 2005 x-ray of plaintiff's cervical spine revealed degenerative changes–mild disc space narrowing–at the C5-6 level. Evidence of shrapnel in plaintiff's chest was also detected. (T. 161).[7]

As noted above, in May 2005, consultative examiner Kalyani Ganesh, M.D. found that plaintiff had no gross limitation in sitting, standing, walking, climbing, or bending, and had a mild-to-moderate limitation in overhead activity. (T. 121). Dr. Ganesh observed plaintiff's right shoulder elevation and abduction limited to 90 degrees, internal rotation of 10 degrees and external rotation of 0 degrees; but the doctor perceived that plaintiff's effort on range of motion testing was "poor." (*Id.*). Dr. Ganesh also found some decreased range of motion with respect to plaintiff's cervical and lumbar spine, while noting that the lumbar-sacral spine x-ray showed straightening of the lordotic curve.[8] (T. 120-21). Dr. Ganesh's other findings–including that plaintiff demonstrated 5/5 strength in both upper and lower

---

[7] The doctor who reported on the November 2005 x-rays suggested that an MRI would provide a more sensitive imaging assessment (T. 161), but Dr. Manion apparently determined that an MRI of plaintiff was not appropriate given the bullet fragments in his chest wall and elsewhere (T. 169).

[8] Dr. Ganesh had access to the May 2005 x-ray report referenced above which also revealed debris evidencing the prior gunshot injury. (T. 123),

extremities and negative straight leg raising bilaterally[9]–were benign. (T. 121-22).

In August 2005, plaintiff, complaining of "rather severe back and right upper arm pain," began treatment with Dr. Lawrence Manion. (T. 130). Dr. Manion's treatment notes indicate that plaintiff was "alert, uncomfortable"; that he had decreased grip strength, of undetermined degree, in his dominant right arm; and that the straight leg raising test was negative. He prescribed Lortab 5/500 for plaintiff's pain. (*Id.*).

During his second visit to Dr. Manion on October 13, 2005, plaintiff reported "relief with the Lortab" but also "fairly severe chronic pain." (T. 131). Dr. Manion renewed plaintiff's prescription for Lortab and, at plaintiff's request, wrote a note that plaintiff was "disabled from regular gainful employment secondary to gunshot injury and chronic pain." (T. 131-32). On October 20, 2005, Dr. Manion completed a Medical Report form for Social Security, in which he reported that plaintiff's impairments "affected" his lifting/carrying, sitting/standing/walking, and use of hands or feet; however, the doctor did not check any of the boxes which asked for more specific information about the degree of the limitation on these functions. (T. 134-37). In a cover letter to the lawyer then handling plaintiff's SSI/DBI application, Dr. Manion referenced his "very limited assessment of [plaintiff's] employability" and noted that "this sort of exquisitely detailed evaluation of occupational function" was not "part of [his] education, training, experience, or custom[ary] practice." (T. 138).

---

[9] Straight leg raises are used to diagnose, *inter alia*, lumbar disc herniation and radiculopathy, or damage to the spinal nerve roots. Family Practice Notebook, http://www.fpnotebook.com/ortho/exam/strghtlgrs.htm.

On January 12, 2006, plaintiff told Dr. Manion that he had a "good response" to the Lortab "initially" but was not getting "really adequate" pain relief. Dr. Manion increased plaintiff's dosage of hydrocodone, prescribing Lortab 7.5/500. (T. 154). Dr. Manion did not conduct an examination, but observed that plaintiff "appears comfortable seated on the examination table." The doctor noted that Dr. Cho, a consulting neurosurgeon, had reported that plaintiff was not a suitable candidate for surgery and "was substantially disabled from gainful employment because of chronic pain problems." (*Id.*; T. 317).

Dr. Cho's report of his December 2005 examination noted plaintiff's complaints of "total spinal pain" described as "7 out of 10."[10] (T. 317). Dr. Cho stated that plaintiff's x-ray of the cervical spine showed disc degeneration at C5-C6, but was otherwise "unremarkable." His examination indicated that plaintiff had a 3/5 right deltoid strain, but that his strength was otherwise intact. (*Id.*).

On January 31, 2006, Dr. Manion endorsed plaintiff's application for a disabled parking permit,[11] checking off boxes that plaintiff had a permanent disability from back and right shoulder pain and that he "was severely limited in his ability to walk." (T. 139). On February 9, 2006, Dr. Manion noted that plaintiff acknowledged that he was getting improved pain control on prescribed hydrocodone since the doctor increased the dosage. (T. 156). On February 23, 2006, Dr. Manion wrote, on a

---

[10] Plaintiff also complained to Dr. Cho that his Lortab was "minimally helpful," (T. 317); but this was before Dr. Manion prescribed stronger pain medication.

[11] Plaintiff reported that he drove an automobile during the relevant time period. (T. 91, 194, 350-51).

prescription pad page, that plaintiff "has spinal and [right] shoulder injury and chronic pain . . . and is considered permanently disabled from gainful employment." (T. 141). At a follow-up visit on March 16, 2006, plaintiff reported to Dr. Manion that he was still taking the Lortab 7.5/500 twice daily and had no "specific complaints." (T. 153). In August 2006, Dr. Manion saw plaintiff and renewed his prescription for Lortab 7.5/500 without noting any clinical observations relating to plaintiff's back and shoulder issues.[12]

In September 2006, almost six months after plaintiff's last insured date, he was assessed by Dr. Nebab of the Rome Memorial Hospital Pain Clinic. (T. 167-70). Plaintiff complained of upper back pain that radiates into his shoulders and low back, which, at its most severe, resulted in "severe" limitations on daily activities and poor sleep. (T. 168-69). The doctor reported that plaintiff walks with the assistance of a cane. Plaintiff stated that he had been treated with hydrocodone for the past year and had no adverse side effects from past medications. (T. 168).

Dr. Nebab reported that plaintiff had limited use of his right, upper extremity; numbness from his right shoulder to elbow; and a diminished range of motion in his right shoulder. The doctor noted that plaintiff's 2000 MRI revealed some disc herniation of the low cervical spine and some bulging of the lumbar spine. (T. 168). The doctor detected distinct tenderness within the plaintiff's thoracic spine region and an inability to rotate the thoracic spine due to complaints of pain. Plaintiff had no

---

[12] The medical records reflect visits to Dr. Manion in October and November 2006, which focused on plaintiff's cyanotic left little finger–apparently the result of vascular issues which were subsequently resolved. (T. 142, 144, 146, 147, 233).

lumbar spine tenderness and could flex and extend the lumbar spine. Straight leg raises were found to be negative bilaterally. The doctor reported that plaintiff had a weak grip in his left hand,[13] but made no such observation about his right hand below the previously injured shoulder. (T. 169).

Dr. Nebab's clinical impression was that plaintiff had a right shoulder and brachial plexus injury and overlying "myofascial pain."[14] He looked to "rule out" spinal cord or vertebral disease of the thoracic spine and neuralgic pain. Dr. Nebab suggested that plaintiff try some new medications, including prednisone and Elavil, and consider corticosteroid injections; he directed that plaintiff continue with his hydrocodone prescription, but reduce current dosages if non-opiate medications result in significant improvement. (T. 169).

In August 2008, Nurse Practitioner Goetz at Boonville Family Care, where Dr. Manion previously practiced, completed a detailed medical assessment of the plaintiff, which was subsequently endorsed by plaintiff's new treating physician, Vivienne Taylor, M.D. (T. 250-52). The assessment stated that plaintiff suffered from chronic cervical, thoracic and lumbar pain due to ongoing complications from his 1991 gunshot wound to his right shoulder and spinal disc degeneration. (T. 252). The assessment found that plaintiff could lift only up to ten pounds occasionally and five pounds frequently; could stand or walk less than one hour in an eight hour day; and

_____

[13] This may reflect the impact of vascular issues on plaintiff's left hand, which Dr. Manion treated over the following months.

[14] Myofascial pain results when pressure on sensitive points in one's muscles (trigger points) causes "referred" pain in seemingly unrelated parts of one's body. Mayo Clinic Health Information, http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042.

could sit upright for less than four hours per workday. (T. 251). It noted that plaintiff needed to lay down intermittently through the day at an unpredictable frequency and could only occasionally reach in all directions, including overhead. (T. 252).

As noted above, Dr. Teng, who treated plaintiff in 2011,[15] completed a medical source statement purporting to reflect plaintiff's condition between January 1, 2003 and April 22, 2007, based a review of the records of Boonville Family Care from that time period. (T. 313, 321-24). Dr. Teng's RFC assessment indicated that the plaintiff could lift/carry only between five and ten pounds, could walk only with the support of a cane, could only sit for only one hour or less during an eight-hour workday, needed to lay down intermittently during the day, and, because of incapacitating pain, would be "off-task" for at least 50% of the time in an eight-hour workday. (T. 321-23).

On remand, the ALJ considered the opinions of treating physicians, Dr. Manion and Dr. Teng, but did not give them controlling weight. (T. 237-38). Dr. Manion's conclusory opinions that the plaintiff was "disabled from regular gainful employment" was entitled to no deference, as this ultimate conclusion is reserved to the Commissioner. *See Michels v. Astrue,* 297 F. App'x 74, 76 (2d Cir. 2008) ("no deference is owed to [a] doctor's statement that [a claimant] was 'disabled'" ); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[a] treating physician's statement that a claimant is disabled cannot itself be determinative"). As the ALJ noted, Dr. Manion's treatment notes in 2005 and 2006 reflect minimal observations or clinical findings supporting his finding of disability; and the doctor essentially conceded that he lacked

---

[15] By that time, Dr. Teng had prescribed oxycodone, a more powerful pain killer than hydrocodone, and neurontin to treat plaintiff's pain. (T. 315; *see also* T. 154).

the training and experience to opine regarding plaintiff's functional limitations, the extent of which are critical to the SSI/DBI disability determination. (T. 138, 237).[16] *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6) ("the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . are relevant factors that we will consider in deciding the weight to give to a medical opinion").[17] Moreover, although Dr. Manion's opined that plaintiff was disabled due to "chronic pain" (T. 131-32, 141), his subsequent treatment notes in early 2006 indicated that plaintiff was getting improved control of his pain on his medication, as adjusted. (T. 153, 156). *See, e.g., Brockway v. Barnhart*, 94 F. App'x 25, 28 (2d Cir. 2004) (an ALJ may afford substantially less weight to a treating source's opinion that is inconsistent with his clinic notes).

The ALJ also appropriately discounted the opinion of Dr. Teng regarding plaintiff's functional limitations, which was purportedly based only on the medical records of Boonville Family Care between 2003 and April 2007 and which were set forth on a check-off form. (T. 237). Dr. Teng did not treat plaintiff during the

---

[16] The ALJ did not address the medical evidence from Dr. Cho's single examination of plaintiff; but his opinion was basically limited to the ultimate conclusion of total disability, with little supporting clinical evidence other than an x-ray showing minor disk degeneration at one location in the cervical spine. (T. 317-18).

[17] These various provisions are set forth in subsection (c) of 20 C.F.R. §§ 404.1527 and 416.927 in the most recent version of the Social Security regulations. This court has relied on the regulatory provisions as numbered at the time of the hearing and determination on remand.

relevant time period, his specific RFC findings were not supported by the medical records from the relevant time period, and Dr. Teng provided little or no corroborating explanation or clinical findings supporting his findings. (T. 321-23). *See, e.g.*, *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (upholding Commissioner's determination not to give controlling weight to the treating physician's check-off form regarding RFC in part because the degree of impairment reflected on the RFC form was not corroborated by contemporaneous treatment notes and was not supported by "medical signs and laboratory findings" or accompanied by an "explanation") (citing 20 C.F.R. § 404.1527(d)(3)).

As noted above, the ALJ, on remand, relied primarily on the opinion of consultative examiner, Dr. Ganesh. (T. 121, 237-38). Given that I intend to recommend remand for further proceedings, this court will not attempt to decide whether Dr. Ganesh's opinion, alone, would be sufficient to outweigh the opinions of the treating doctors with respect to some or all of the issues relevant to the ultimate disability determination. In remanding the Commissioner's prior decision, Judge Mordue correctly noted that reliance on the opinion of a consulting examiners may be appropriate[18] although the fact that such doctors typically only examine the claimant once may limit the weight that should be accorded to such an opinion. *Schmelzle v. Astrue*, 2010 WL 3522305, at *2-3. Given that no further medical evidence from doctors who examined plaintiff during the relevant time period is available, the

---

[18] *See, e.g.*, *Netter v. Astrue*, 272 F. App'x 54, 55–56 (2d Cir. 2008) (reports of consultative and/or non-examining physicians may override opinions of treating physicians, provided they are supported by substantial evidence in the record).

contemporaneous findings of Dr. Ganesh, *e.g.*, that plaintiff had no gross limitations for sitting, standing, or walking may be entitled to more weight on remand than Judge Mordue suggested.[19]

The ALJ applied the appropriate standards in assessing the credibility of plaintiff's statements regarding the severity of his symptoms and limitations. (T. 235-36). In making his credibility assessment, the ALJ correctly considered a number of factors, including discrepancies in the plaintiff's various statements and in his testimony in 2006 and 2011 with regard to the nature and scope of his daily activities and the treatment prescribed for him. (T. 236).[20] *See, e.g., Rutkowski v. Astrue*, 368 F.

---

[19] *See, e.g.*, *Dixie v. Commissioner of Social Sec.*, 5:05-CV-345 (NAM/GJD), 2008 WL 2433705, at *12 (N.D.N.Y. June 12, 2008) (the ALJ's decision to reject the treating physician's opinion regarding plaintiff's ability to walk, stand, and sit is supported by substantial evidence, including Dr. Ganesh's finding that plaintiff had "[n]o gross limitation to sitting, standing, walking, climbing, bending, or the use of the right upper extremity"); *Schmitt v. Commissioner of Social Sec.*, 5:11-CV-796 (LEK/ATB), 2012 WL 4853506, at *9 (N.D.N.Y. July 24, 2012) (in relying on the opinion of Dr. Ganesh that the plaintiff, *inter alia*, had no gross limitation sitting, standing, or walking, the ALJ made an appropriate function-by-function RFC supported by substantial evidence) (Report-Recommendation), *approved*, 2012 WL 4853067 (N.D.N.Y. Oct 11, 2012); *Heburn v. Astrue*, 6:05-CV-1429 (LEK/DEP), 2009 WL 174941, at *8 (N.D.N.Y. Jan. 23, 2009) (the ALJ's RFC determination draws support from the findings of Dr. Ganesh who, notwithstanding his diagnoses that plaintiff suffers from fibromyalgia, nonetheless opined that plaintiff has only a mild degree of limitation in lifting, carrying, pushing, and pulling, with no gross limitation noted in sitting, standing, walking, climbing, or bending).

[20] For example, the plaintiff stated in 2005 and 2006 that he could care for his personal needs and dress without assistance (T. 89-90, 119, 213, 215); but he testified in 2011 that, in 2005 and 2006, he had to lie on a bed to get dressed and required help from his grandmother (T. 346). (T. 236). The plaintiff testified in July 2011 that Dr. Manion prescribed him a cane for walking (T. 344), but his prior statements indicated that the cane was not prescribed (T. 94, 191), and there is no reference to a cane in Dr. Manion's medical notes. (T. 234, 236). Plaintiff did not have a cane with him during his 2005 examination by Dr. Ganesh (T. 120), but brought it to the first administrative hearing and subsequent, evaluative medical appointments when he was attempting to bolster his claim for disability benefits (T. 168, 191). (T. 234). In assessing credibility, the ALJ also noted the plaintiff requested that Dr. Manion provide him with an after-the-fact prescription to account for some drugs, not prescribed to plaintiff, that were found in his possession during a law enforcement traffic stop (T. 156). (T. 236).

App'x 226, 230 (2d Cir. 2010) (the ALJ adequately supported his credibility finding, *inter alia*, by noting inconsistencies between allegations made by plaintiff before the hearing and his testimony at the initial administrative hearing). However, I will not decide the issue of whether there is substantial evidence supporting the ALJ's credibility determination because I am recommending further development of the record on remand, which may require reevaluation of plaintiff's credibility. *Schmelzle v. Astrue*, 2010 WL 3522305, at *4.

This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). While the extensive delay in this case is a factor supporting a remand for the determination of benefits, it is not, by itself, sufficient unless there is conclusive evidence of disability and no apparent basis to conclude that a more complete record might support the Commissioner's decision. *Id.*; *Giddings v. Astrue*, 333 F. App'x 649, 655 (2d Cir. 2009).

b.    **Availability of Additional Evidence Supporting Commissioner's Position on Remand**

As noted, notwithstanding the fact that plaintiff bears the burden with respect to the RFC determination at step four of the sequential disability analysis, the current record suggests a lack of substantial evidence supporting the ALJ's RFC determination that plaintiff met all of the functional requirements to perform light work, particularly those relating to the ability to lift and carry. However, notwithstanding the apparent unavailability of other medical evidence from the

relevant time period, the Commissioner, on remand, may be able to employ a medical expert to review all of the medical evidence of record, including some not considered by the ALJ so far, and generate evidence supporting a finding that plaintiff was not disabled during the relevant time period.[21] *See, e.g., Bathrick v. Astrue*, 2012 WL 1069180, at *5 (ordering remand and directing the ALJ to obtain the necessary medical opinions regarding Bathrick's physical limitations, including her abilities to perform the tasks required by medium level jobs; "[i]f [the] treating physician is unable to provide the necessary evidence, the ALJ shall then attempt to obtain the evidence through other channels[,]" such as . . . "an opinion from a medical expert. 20 C.F.R. § 404.1527(f)(2)(iii)").

Accordingly, this court recommends that this case be again remanded for further proceedings consistent with this opinion. On remand, the ALJ shall consider securing the testimony of a medical expert to assist in properly analyzing all of the medical opinion and other evidence, and in assessing the plaintiff's credibility, in order to properly determine plaintiff's RFC and whether there is other work in the national

---

[21] For example, a medical expert might conclude, based, *inter alia*, on the specific RFC assessment of Nurse Practitioner Goetz and Dr. Taylor of Boonville Family Care from 2008 that plaintiff could lift up to ten pounds occasionally and five pounds frequently (T. 250-51), that plaintiff could meet the lift/carry requirements to perform sedentary work back in or before March 2006. *Cf. Cataneo v. Astrue*, 2013 WL 1122626, at * 16, discussed above in note 6, which suggests that, in the absence of adequate past medical evidence, a medical expert can infer a remote onset date for disability based on present medical evidence. *See also* 20 C.F.R. §§ 404.1567(a), 416.967(a) (sedentary work involves lifting no more than 10 pounds at a time). The court notes, however, that the Goetz/Taylor RFC assessment (T. 251) suggests that, at least as of 2008, plaintiff could not meet the general requirement of sedentary work that the claimant be able to sit for approximately six hours during an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *5. An medical expert could attempt to weigh that later evidence against the opinion of Dr. Ganesh from the relevant time period that plaintiff had no gross limitation with respect to sitting or standing.

28

economy that the plaintiff can perform.  Because of the extensive delay in the consideration of plaintiff's claim for DIB benefits during the relevant closed period, the proceedings on remand should be conducted on an expedited basis.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity and other further proceedings, consistent with this Report.  Proceedings on remands should be conducted on an expedited basis.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 5, 2013

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**